**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**Case No. 2:26-cr-14**
**JUDGE EDMUND A. SARGUS, JR.**

**ROBERT HICKS, JR.,**

**Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant Robert Hicks, Jr.'s Motion to Suppress. (ECF No. 37.) The Government opposes his Motion (ECF No. 38), and the Court held a hearing on Mr. Hicks's Motion on October 27, 2026 (ECF No. 43). For the reasons below, Mr. Hicks's Motion is **DENIED**.

## I. BACKGROUND

This case involves a traffic stop and search of a vehicle that resulted in Mr. Hicks's arrest and indictment. Mr. Hicks challenges the dog sniff and subsequent search of the automobile in which he was a passenger as unconstitutional under the Fourth Amendment. Accordingly, he moves to suppress the evidence obtained during the warrantless search of the vehicle.

### A. Factual Background

On the evening of March 9, 2025, Deputy Shayne Leggett with the Noble County Sheriff's Office was observing traffic from his cruiser while sitting stationary on Interstate 77. (ECF No. 38-1, Page ID 152; ECF No. 38-2, PageID 190.) At approximately 10:21 p.m., Deputy Leggett observed a black Chrysler 300 traveling southbound with window tint that appeared excessively dark, blocking visibility into the vehicle. (ECF No. 38-2, PageID 190, 196.) The

Deputy began following the vehicle and ran the license plate, which showed the vehicle as being registered to Erik Jones of the Cleveland area. (*Id.*) Deputy Leggett activated his emergency lights to conduct a traffic stop and the vehicle promptly pulled to the side of the road. (ECF No. 38-1, PageID 158.)

Deputy Leggett exited his cruiser and approached the passenger's side of the vehicle, at which point he made contact with the two occupants, driver Erik Jones and passenger Hicks. (ECF No. 38-2, PageID 196.) While seeking identification from the occupants, Deputy Leggett observed that Mr. Hicks appeared stiff and was taking shallow breaths. (*Id.*; ECF No. 38-1, PageID 153–54.) Deputy Leggett also noted that Mr. Hicks's hands were shaking while he was handing his identification to the Deputy. (*Id.*) Deputy Leggett asked both occupants if there was anything illegal in the vehicle and they indicated that there was not. (ECF No. 38-2, PageID 196.)

When Deputy Leggett asked the occupants where they were traveling, Mr. Jones advised that he owned a carpentry business and that they were traveling to Charlotte, North Carolina for work. (ECF No. 38-1, PageID 154, 163.) Deputy Leggett asked Mr. Jones for consent to search the vehicle, but Mr. Jones declined, stating that he wanted to continue on his trip. (*Id.*, PageID 163–64.) At that point, Deputy Jeffrey Perry arrived on scene with a tint meter. (*Id.*, PageID 164; ECF No. 38-2, PageID 196.) Because Deputy Leggett did not have a tint meter in his cruiser, he had asked Deputy Perry to bring one to the scene.[1] (*See* ECF No. 38-1, PageID 164–65.) "[N]ot long after" Deputy Perry arrived, the deputies performed a tint measurement, which revealed the light transmittance of the window to be fourteen percent, in violation of Ohio law. (*Id.*, PageID

[1] Mr. Hicks does not contend that the time it took for Deputy Perry to arrive on scene with the tint meter unreasonably prolonged the stop.

155, 166.) Side windows must have a light transmittance of not less than fifty percent plus or minus three percent. Ohio Admin. Code 4501-41-03(A)(3).

According to Deputy Leggett, Noble County Sheriff's Deputies did not wear body cameras at the time of the stop. The precise time of certain events can be gleaned from the computerized records of the dispatcher. (*See* ECF No. 43.) The Incident Reports (ECF Nos. 38-2, 38-5) provide the data points necessary to analyze the sequencing of events. Deputy Perry arrived on scene with the tint meter at 10:30:48 p.m. (ECF No. 38-2, PageID 190.) The deputies performed the tint measurement and determined that the window tint was unlawful. (*See* ECF No. 38-1, PageID 155, 165–66.) Having "a feeling there was more going on," Deputy Leggett ordered both occupants out of the car and patted them down. (*See id.*, PageID 155.) Then, Deputy Leggett deployed his canine to do a free-air sniff around the vehicle. (*Id.*) The deputies advised dispatch at 10:35:15 p.m. that the canine was out of the cruiser. (ECF No. 38-5, PageID 223.) Ninety-one seconds later, at 10:36:46 p.m., the deputies advised dispatch that the canine alerted. (*Id.*)

Based on the canine's alert, Deputies Leggett and Perry searched the vehicle and located approximately 271 grams of methamphetamine in a backpack on the passenger-side floorboard, underneath where Mr. Hicks's feet had been located. (ECF No. 38-1, PageID 155–57; ECF No. 38-2, PageID 196.) Deputy Leggett then placed Mr. Hicks in handcuffs and read him his *Miranda* rights. (ECF No. 38-2, PageID 196.) According to Deputy Leggett, Mr. Hicks acknowledged that the backpack belonged to him, but had "nothing to say" when Deputy Leggett asked about the contents of the backpack. (*See id.*; ECF No. 38-1, PageID 156.) Mr. Hicks disputes making any statement acknowledging ownership of the backpack. (ECF No. 37, PageID 124.) After placing Mr. Hicks in Deputy Perry's patrol vehicle, Deputy Leggett issued a verbal

warning to Mr. Jones for the window tint violation and released him from the scene. (ECF No. 38-2, PageID 196.)

The Court finds Deputy Leggett, the only witness in the case, to be credible. In addition to observing his testimony, the Court notes that no evidence to the contrary was adduced at the hearing.

**B. Procedural Background**

On March 12, 2025, Mr. Hicks was indicted in the Noble County Court of Common Pleas on one count of aggravated possession of drugs in violation of Ohio Revised Code § 2925.11. (*State v. Hicks*, Noble C.P. No. CRI225-2025.) Mr. Hicks moved the state court to suppress the evidence obtained as a result of his "warrantless prolonged detention." (ECF No. 38-1, PageID 148.) After conducting a hearing, the state trial court denied Mr. Hicks's motion to suppress. (ECF No. 38-3, PageID 198–99.)

On October 8, 2025, the United States filed a complaint against Mr. Hicks in this Court. (*See* ECF No. 1.) The next day, the Noble County Prosecutor entered a *Nolle Prosequi*, agreeing to dismiss the case in the Noble County Court of Common Pleas. (*See State v. Hicks*, Noble C.P. No. CRI225-2025.) On January 15, 2026, a federal grand jury in this Court returned an indictment charging Mr. Hicks with knowingly and intentionally possessing with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841. (ECF No. 18).

Mr. Hicks appeared before this Court on January 22, 2026 and entered a plea of not guilty. (ECF No. 21.) Trial is set to begin on December 14, 2026. (ECF No. 41.) Mr. Hicks moved to suppress the evidence and statements obtained as a result of the March 9, 2025 traffic stop, detention, canine sniff, and search. (ECF No. 37, PageID 120).

## II. ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . and effects[] against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. *United States v. Calvetti*, 836 F.3d 654, 665 (6th Cir. 2016). The reasonableness of a traffic stop turns on whether the police have reasonable suspicion to believe that a traffic violation has occurred. *United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024) (citing *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). But even where a traffic stop is originally predicated on the requisite reasonable suspicion, the stop's duration may nevertheless exceed constitutional limits. *United States v. Williams*, 68 F.4th 304, 307 (6th Cir. 2023) (citing *United States v. Whitley*, 34 F.4th 522, 528–29 (6th Cir. 2022)). The initial length of the stop may only stretch "as long as the officer reasonably needs to complete the 'mission' for which it began." *Id.* (quoting *Whitley*, 34 F.4th at 529).

An officer's mission during a traffic stop includes determining whether to issue a ticket and performing other "ordinary inquiries" incident to the traffic stop. *Calvetti*, 836 F.3d at 665 (quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)). Such ordinary inquiries include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355; *see also United States v. Jordan*, 100 F.4th 714, 718 (6th Cir. 2024).

But once that initial mission has—or reasonably should have—concluded, the officer needs reasonable suspicion of additional wrongdoing in order to prolong the stop. *Rodriguez*, 575 U.S. at 354; *Jordan*, 100 F.4th at 718; *Taylor*; 121 F.4th at 594 ("An officer needs reasonable suspicion to prolong a traffic stop beyond what is necessary to resolve the initial reason for the stop."). Measures aimed at "ordinary criminal wrongdoing," including a dog sniff,

are "not fairly characterized as part of the officer's traffic mission." *Whitley*, 34 F.4th at 529 (quoting *Rodriguez*, 575 U.S. at 355–56); *Calvetti*, 836 F.3d at 665. Accordingly, if a traffic stop is extended by the deployment of a drug-sniffing dog, the prolonged seizure must be justified by reasonable suspicion. *Jordan*, 100 F.4th at 718; *see also Klaver v. Hamilton Cnty.*, Nos. 22-5083/5084, 2022 U.S. App. LEXIS 30642, at *7-8 (6th Cir. Nov. 3, 2022) (noting that officers are prohibited from prolonging a traffic stop beyond the time necessary to investigate and write a ticket for a traffic violation unless the officers have reasonable suspicion of other crimes).

Mr. Hicks does not challenge the propriety of the initial stop of the vehicle. Instead, he argues that the stop was extended by the dog sniff, and impermissibly so because Deputy Leggett lacked reasonable suspicion of additional wrongdoing. (ECF No. 37, PageID 125–28.) The Government counters that the traffic stop was not prolonged beyond the time reasonably required to complete the mission of the stop, but even if it had been, Deputy Leggett had reasonable suspicion to justify the extended seizure. (ECF No. 38, PageID 139–42.) For the reasons explained below, the Court finds that the traffic stop was prolonged by the dog sniff, but that Deputy Leggett had reasonable suspicion to extend the stop.

### A. The Dog Sniff Prolonged the Traffic Stop

When Deputy Leggett deployed the canine to conduct the free-air sniff, he had already verified the identities of both Mr. Jones and Mr. Hicks and confirmed that they had no outstanding warrants, that the license plate was valid, and that the car was not stolen. (*See* ECF No. 38-1, PageID 158–60.) Prior to deploying the canine, he had confirmed the traffic violation that prompted the stop—that the window tint was excessively dark in violation of Ohio law. (*See id.*, PageID 165–66.) Therefore, at that juncture, the ordinary inquiries incident to the traffic stop had concluded, and all that was left to do to complete the "mission" of the traffic stop was issue a ticket or warning. *Whitley*, 34 F.4th at 529 (quoting *Rodriguez*, 575 U.S. at 354–55).

Here, Deputy Leggett opted to issue a warning. (ECF No. 38-1, PageID 165.) Because the reasonableness of a seizure "depends on what the police in fact do," the stop could only last as long as reasonably necessary for Deputy Leggett to issue the warning. *Whitley*, 34 F.4th at 529 (quoting *Rodriguez*, 575 U.S. at 357). But rather than promptly issue the warning after confirming the traffic violation, Deputy Leggett "detour[ed]" from the mission of the traffic stop by undertaking a measure "aimed at 'detect[ing] evidence of ordinary criminal wrongdoing,'" thereby prolonging the stop beyond its original mission. *See Rodriguez*, 575 U.S. at 355–56 (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40–41 (2000)); *see also Calvetti*, 836 F.3d at 665; *Williams*, 68 F.4th at 307 (noting that officer's mission ended when she approached the vehicle to either issue a ticket or allow occupants to leave). Deputy Leggett testified that while the dog sniff was occurring, the traffic investigation had stopped. (ECF No. 43.) Because the traffic stop had "morphed into a drug investigation," the prolonged seizure "objectively exceeded the relevant scope of the traffic stop." *Whitley*, 34 F.4th at 530.

Although the dog sniff may have only prolonged the stop by three to four minutes, *Rodriguez* rejected the argument that extending a traffic stop is permissible as long as the "overall duration of the stop remains reasonable in relation to the duration of other traffic stops involving similar circumstances." *Id.* at 529 (quoting *Rodriguez*, 575 U.S. at 357). The critical fact is that the dog sniff "add[ed] time to" the stop. *Rodriguez*, 575 U.S. at 357; *Williams*, 68 F.4th at 309 ("Sanctioning that kind of brief prolongation would run afoul of *Rodriguez*, which held that any time (no matter the duration) added to a traffic stop beyond what was reasonably necessary to investigate the original cause for the stop must be grounded in independent reasonable suspicion."); *Whitley*, 34 F.4th at 529 ("*Rodriguez* expressly rejected the view that a 'de minimis' intrusion or delay is permissible."). Because the stop was prolonged by the dog

sniff, it needed to be justified by independent reasonable suspicion. *See Whitley*, 34 F.4th at 532. Accordingly, the Court must turn to whether reasonable suspicion existed.

The conclusion just reached as to the dog sniff and the Fourth Amendment is consistent with case law binding on this Court. The undersigned would respectfully decide this case differently if not otherwise constrained. The conduct of the Deputy Sheriff did not rise to any level of misconduct. Deputy Perry arrived with the tint meter at 10:30 p.m., performed the tint measurement, and by 10:35 p.m., the canine was out of the cruiser. The time for the dog to alert was ninety-one seconds. It took no longer than three to four minutes for the Deputy to return to his cruiser, remove the dog along an interstate highway, and walk the dog around the vehicle. Once the dog alerted, the information was relayed and recorded by the dispatcher. The additional time involved was de minimis. As noted, binding case law does not permit de minimis extension of a seizure.

Further, rather than relying on precise temporal facts documented in computerized dispatch records, the case instead turns on more amorphous, generalized testimony that follows. A trained canine is incapable of explicit or implicit bias. An officer's view of human behavior is far less objective.

**B. The Prolonged Stop Was Supported By Reasonable Suspicion of Additional Criminal Wrongdoing**

To extend the traffic stop, Deputy Leggett needed to have a reasonable and articulable suspicion that unlawful activity—aside from the traffic violation—was afoot. *Taylor*, 121 F.4th at 595; *United States v. Urraca*, 123 F.4th 834, 836–37 (6th Cir. 2024). In other words, he needed a "particularized and objective basis" for suspecting Mr. Hicks of criminal activity. *Taylor*, 121 F.4th at 595 (quoting *Kansas v. Glover*, 589 U.S. 376, 380 (2020)). Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably

less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Although reasonable suspicion requires "at least a minimal level of objective justification," the hurdle is not "particularly high." *Id.*; *United States v. Belakhdhar*, 924 F.3d 925, 928 (6th Cir. 2019) (citing *Navarette v. California*, 572 U.S. 393, 397 (2014)). The government must point to specific and articulable facts from which a rational inference could be drawn that criminal activity has occurred. *United States v. Urrieta*, 520 F.3d 569, 573 (6th Cir. 2008). An inchoate and unparticularized suspicion or hunch is insufficient. *Taylor*, 121 F.4th at 595.

Yet, in forming reasonable suspicion, officers are entitled to make commonsense judgments about human behavior and draw inferences based on their experience and specialized training. *Id.* In evaluating reasonable suspicion, courts must consider the totality of the circumstances and assess whether everything the officer observed, taken together and in context, is objectively suspicious. *Urrieta*, 520 F.3d at 573; *Jordan*, 100 F.4th at 719. Although the Court does not review each factor relied upon by the officer in isolation, it must examine the factors in an orderly fashion, with a brief discussion of each factor and its weight in the analysis. *Taylor*, 121 F.4th at 595.

Deputy Leggett identified four bases to establish reasonable suspicion that warranted prolonging the traffic stop: (1) the time of travel, (2) the vehicle's window tint, (3) Mr. Hicks's behavior, and (4) the occupants' stated travel plans. (ECF No. 38-1, PageID 170.)

### 1. The Time of Travel

Deputy Leggett testified that he found the time of travel—approximately 10:30 p.m.—to be suspicious. (*See id.*) But time of travel does not add much to the reasonable suspicion calculus. *United States v. Chivers*, No. 1:19-cr-119, 2020 U.S. Dist. LEXIS 178314, at *31 (S.D. Ohio Sep. 28, 2020) (Cole, J.). The Sixth Circuit has "never suggested that late-night travel is

inherently suspicious." *Id.* (quoting *United States v. Townsend*, 305 F.3d 537, 543 (6th Cir. 2002)). Indeed, even an individual's late-night presence in a high-crime area does not establish reasonable suspicion. *Family Serv. Ass'n ex rel. Coil v. Wells Twp.*, 783 F.3d 600, 604 (6th Cir. 2015). Although the time of day is relevant to the analysis, it is an unreliable indicator of criminal activity. *See id.*; *Townsend*, 305 F.3d at 543; *Hoover v. Walsh*, 682 F.3d 481, 495 (6th Cir. 2012) (describing time of day as "relevant without being independently dispositive").

### 2. The Vehicle's Window Tint

Deputy Leggett testified that the window tint factored into his decision to extend the stop and deploy his canine to conduct a free-air sniff of the vehicle. (*See* ECF No. 38-1, PageID 170.) The Government contends that excessively dark window tint is "an indication that the vehicle's occupants do not want others to see what is going on inside the car." (ECF No.38, PageID 141.) Regardless, "any time (no matter the duration) added to a traffic stop beyond what was reasonably necessary to investigate the original cause for the stop must be grounded in *independent* reasonable suspicion." *Williams*, 68 F.4th at 309 (emphasis added). Because the excessive window tint was the initial reason for the stop, it cannot be used to justify the dog sniff. *See id.*; *Taylor*, 121 F.4th at 595; *Hernandez v. Boles*, 949 F.3d 251, 256 (6th Cir. 2020) ("[A]ny extension of a traffic stop absent independent reasonable suspicion is improper.").

### 3. Mr. Hicks's Behavior During the Stop

Upon approaching the vehicle, Deputy Leggett noticed that Mr. Hicks "appeared stiff and was taking shallow breaths." (ECF No. 38-2, PageID 196.) Additionally, while obtaining identification from the occupants, Deputy Leggett observed Mr. Hicks's hands shaking. (*Id.*) Deputy Leggett testified that "through training and a lot of experience conducting interdiction [] on the interstate," he has noticed "that type of behavior" "a lot" in traffic stops where illegal narcotics have been discovered. (ECF No. 38-1, PageID 154.)

Shaking hands and other manifestations of nervousness are relevant but unreliable indicators of criminality in the context of a traffic stop. *Calvetti*, 836 F.3d at 666; *United States v. Pedicini*, 804 F. App'x 351, 355 (6th Cir. 2020). Most motorists do not enjoy being pulled over, as the prospect of a ticket, insurance premium increases, or a suspended license "perturb even the most innocent drivers." *Jordan*, 100 F.4th at 721. But it is less clear why a passenger, as opposed to a driver, would exhibit nervous behavior. *Id.* At the time of the stop, Deputy Leggett had between seven and nine years of experience in law enforcement and had conducted hundreds of traffic stops. (ECF No. 43.) He testified that he had observed behavior like Mr. Hicks's in past stops in which illegal narcotics had been uncovered. (ECF No. 38-1, PageID 154.) Accordingly, Mr. Hicks's nervousness provides modest support for the Deputy's decision to prolong the stop. *See Jordan*, 100 F.4th at 721; *Williams*, 68 F.4th at 308 (noting importance of giving "due weight" to officer's experience).

**4. The Occupants' Stated Travel Plans**

After walking up to the vehicle, Deputy Leggett inquired where the occupants were heading. (ECF No. 38-1, PageID 154.) Mr. Jones advised that he owned a carpentry business and that they were traveling to Charlotte, North Carolina for work. (*Id.*, PageID 154, 163.) Deputy Leggett found that "odd" because he only noticed one medium-sized duffle bag in the backseat, a minimal amount of luggage seemingly inconsistent with "traveling that far." (*Id.*, PageID 154.) But Deputy Leggett acknowledged that the vehicle had a trunk which could have contained additional luggage. (*Id.*, PageID 163.)

Implausible explanations of travel plans are accorded significant weight in certain cases. *Taylor*, 121 F.4th at 595; *United States v. Winters*, 782 F.3d 289, 299 (6th Cir. 2015). For example, when occupants of a vehicle claim to be relocating from one state to another but have

"almost no luggage," such dubious travel plans can give rise to reasonable suspicion when combined with other factors. *See Calvetti*, 836 F.3d at 667. While there was nothing inherently implausible about their stated travel plans, it would have been odd for the pair to have only one piece of luggage visible if they were traveling several hundred miles in connection with a carpentry business that presumably would require tools, wood, or other supplies.

Deputy Leggett also testified that individuals traveling from cities known to be sources of drugs also raise his suspicions. (ECF No. 43.) Specifically, he noted that Cleveland, Columbus, Akron, and Canton are source cities and that Interstate 77 is a well-documented route for drug-trafficking. (*Id.*) To the extent the Government argues that Deputy Leggett was relying on the fact that he has previously "had multiple traffic stops on [Interstate] 77 southbound that have uncovered illegal narcotics," that argument contributes modestly to the reasonable suspicion analysis here. (*See* ECF No. 38, PageID 141, ECF No. 38-1, PageID 168.)

Generally, travel on a highway that is frequently used to transport drugs is a weak indicator of illegal activity. *Urrieta*, 520 F.3d at 576–77; *Ameyaw v. Del. Cnty. Comm'rs*, No. 2:21-cv-5039, 2023 U.S. Dist. LEXIS 157145, at *18-19 (S.D. Ohio Sep. 5, 2023). Nevertheless, the Sixth Circuit has noted that making a long-haul trip at night from an area that is a source of drugs can serve as an indicator of drug activity. *Jordan*, 100 F.4th at 720. Because Mr. Hicks's travel plans were consistent with an individual transporting drugs, Deputy Leggett was entitled to be suspicious. *Id.*; *United States v. McCallister*, 39 F.4th 368, 374 (6th Cir. 2022) (noting that uncommon or unique facts are not required to justify a seizure).

*****

In determining whether an officer had reasonable suspicion of criminal activity, the court considers the totality of the circumstances. *Calvetti*, 836 F.3d at 666. A "divide-and-conquer"

approach in which each factor is viewed in isolation from the other factors is inappropriate. *Taylor*, 121 F.4th at 595 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Rather, reasonable suspicion exists if an officer, considering all the information available to him, would have reasonably suspected that Mr. Hicks was engaged in unlawful drug activity. *See Whitley*, 34 F.4th at 535. Although individual datapoints may portray entirely innocent conduct, the "overall scatterplot may give rise to reasonable suspicion." *Belakhdhar*, 924 F.3d at 928. "Even entirely innocent behaviors may establish reasonable suspicion in some circumstances." *McCallister*, 39 F.4th at 374 (citing *United States v. Sokolow*, 490 U.S. 1, 9–10 (1989)).

Three factors are at play here—the time of travel, Mr. Hicks's nervousness, and the perceived oddity of his travel plans. The fourth factor advanced by the Government—that Mr. Hicks was traveling in a vehicle with tinted windows—cannot be used to justify the dog sniff because the excessive window tint was the reason for the initial stop. *See* Part II.B.2, *supra*. As noted above, these three factors would not give rise to reasonable suspicion if considered individually and could, theoretically, be consistent with innocent behavior. Nevertheless, just because conduct may be "susceptible of an innocent explanation" does not prohibit an officer from prolonging the stop "to resolve the ambiguity" provided that the sum total of his observations adds up to reasonable suspicion. *See Urraca*, 123 F.4th at 839 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). That is the case here, where Deputy Leggett also relied on the fact that the occupants were on a long-haul overnight trip on a route known for drug trafficking. Although those facts could be consistent with lawful activity, Deputy Leggett was not required to "rule out innocent explanations" to be reasonably suspicious of Mr. Hicks. *Jordan*, 100 F.4th at 722.

The bar for reasonable suspicion is low. *Taylor*, 121 F.4th at 598; *Williams*, 68 F.4th at 308; *Urraca*, 123 F.4th at 837 ("Reasonable suspicion sets a modest bar."); *United States v. Smith*, 74 F.4th 799, 802 (6th Cir. 2023) ("Reasonable suspicion is not particularly difficult to establish."). The Court views the totality of the circumstances "through an objective lens, asking whether there was a moderate chance" that Mr. Hicks was engaged in criminal activity. *See McCallister*, 39 F.4th at 375. Taken together, Mr. Hicks's visible nervousness—his shaking hands, stiffness, and shallow breathing—combined with the fact that he was allegedly on a long-haul overnight trip in connection with carpentry work but had only one piece of luggage visible, on a highway commonly used to traffic drugs, is sufficient.

Further, Mr. Hicks's behavior was consistent with behavior Deputy Leggett had observed in individuals carrying illegal narcotics during stops he has conducted on the same stretch of highway. (*See* ECF No. 38-1, PageID 154.) Deputy Leggett was entitled to rely on his training and years of experience to draw reasonable inferences, to which the Court must give "due weight." *Taylor*, 121 F.4th at 595; *Williams*, 68 F.4th at 308. Although no factor is independently dispositive here, with reasonable suspicion, "the whole is usually greater than the sum of its parts." *Jordan*, 100 F.4th at 719. "[W]eak support is support nonetheless, particularly when considered as part of a single mosaic." *Williams*, 68 F.4th at 308; *United States v. Graham*, 483 F.3d 431, 438 (6th Cir. 2007) (noting that reasonable suspicion can exist even where each individual factor is entirely consistent with innocent behavior). Deputy Leggett had reasonable suspicion that Mr. Hicks was engaged in unlawful activity. *See Jordan*, 100 F.4th at 721 (holding that nervousness, implausible explanation of travel plans, and travel on drug route established reasonable suspicion); *Hoover*, 682 F.3d at 496 (holding that reasonable suspicion existed for

seizure when vehicle had large amount of clothing and personal items and was traveling at night through neighborhood known for theft and property crimes).

Because Deputy Leggett had reasonable suspicion of criminal activity, the continued detention, dog sniff, and subsequent search of the vehicle were justified.

## III. CONCLUSION

For the reasons above, the Court **DENIES** (ECF No. 37) Defendant Robert Hicks, Jr.'s Motion to Suppress.

**IT IS SO ORDERED.**

**11/6/2026**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**